UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

RUDOLPH BETANCOURT,
    Plaintiff,
vs.

Case No. 24-cv-21352-KMW

PROVIDENT DORAL RESORTS, LLC d/b/a
PROVIDENT AT THE BLUE DORAL - MIAMI,
    Defendant.

## FIRST AMENDED COMPLAINT

Plaintiff, RUDOLPH BETANCOURT (hereinafter "Plaintiff"), by his undersigned, hereby files this First Amended Complaint and sues Defendant, PROVIDENT DORAL RESORTS, LLC d/b/a PROVIDENT AT THE BLUE DORAL - MIAMI (hereinafter "Defendant"), for injunctive relief pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.*, (hereinafter the "A.D.A"), the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 (hereinafter the "ADAAG"), and the Florida Building Code.

### JURISDICTION & VENUE

**1.** This Court has original jurisdiction over the action pursuant to 28 U.S.C., §§1331 and 1343 for Plaintiff's claims arising under 42 U.S.C. § 12181. *et seq.*, based upon Defendant's violations of Title III of the ADA (see also, 28 U.S.C. §§ 2201 and 2202).

**2.** The subject property is a hotel located at or about 5300 NW 87th Ave., Miami 33178 (hereinafter "Subject Premises").

**3.** All events giving rise to this lawsuit occurred in the State of Florida. Venue is proper in this Court as the premises are located in the Southern District.

## PARTIES

4.  Plaintiff, RUDOLPH BETANCOURT, is currently a resident of Fenwick, Michigan in the County of Montcalm, is *sui juris*, and is a qualified individual under the ADA and the FACBC.

5.  Plaintiff is a double leg amputee who uses prosthetic devices or a wheelchair to ambulate, a Marine Corps veteran with several friends, family, and colleagues in South Florida. Additionally, Plaintiff enjoys the South Florida weather and the multiple sporting events, festivals, and events that occur throughout South Florida. Plaintiff's frequent visits to Florida include, but are not limited to:

   a.  Coral Springs, FL on or about March 26, 2021,
   b.  Pompano Beach, FL on or about March 28, 2021,
   c.  West Palm Beach, FL on or about June 30, 2021,
   d.  Miami Beach, FL on or about July 15, 2021,
   e.  Jacksonville, FL on or about September 14, 2021,
   f.  Weston, FL on or about September 16, 2021,
   g.  Deerfield Beach, FL on or about September 17, 2021,
   h.  Weston, FL on or about October 10, 2021,
   i.  Sunrise, FL on or about October 11, 2021,
   j.  Orlando, FL on or about March 5, 2022,
   k.  Titusville, FL on or about July 9, 2022,
   l.  Orlando, FL on or about July 21, 2022,
   m.  Pompano Beach, FL on or about July 22, 2022,
   n.  Boca Raton, FL on or about July 23, 2022,
   o.  Stuart, FL on or about July 25, 2022,
   p.  Boca Raton, FL on or about September 1, 2022,
   q.  Margate, FL on or about January 5, 2023
   r.  Ft. Lauderdale, FL on or about January 6, 2023,
   s.  Pembroke Pines, FL on or about January 6, 2023,
   t.  Coral Springs, FL on or about January 7, 2023,

    **u.** Plantation, FL on or about January 7, 2023,

    **v.** Weston, FL on or about January 8, 2023,

    **w.** Melbourne, FL on or about June 12, 2023,

    **x.** Davenport, FL on or about June 13, 2023,

    **y.** Pompano Beach, FL on or about June 14, 2023,

    **z.** Melbourne, FL on or about July 10, 2023,

    **aa.** Ft. Lauderdale, FL on or about July 11, 2023,

    **bb.** Davenport, FL on or about July 11, 2023,

    **cc.** Pompano Beach, FL on or about July 12, 2023,

    **dd.** Ft. Lauderdale, FL on or about September 12, 2023.

    **ee.** Broward County, Florida on or about October 20-23, 2023,

    **ff.** Miami Dade County, Florida on or about October 23-24, 2023,

    **gg.** Miami Dade County, Florida on or about December 18-20, 2023,

    **hh.** Miami-Dade County, Florida on or about February 24-26, 2024,

    **ii.** Boca Raton, Florida on or about February 27, 2024,

    **jj.** Broward County, Florida on or about February 27-29, 2024,

    **kk.** Broward County, Florida on or about March 17-21, 2024.

**6.** Despite the physical limitations to which he is subjected as a result of his disability, Plaintiff continues to lead a full life, frequently travels, dines out, and is also an actively social and independent individual, and specifically has visited the Florida about 3-5 times per year, for extended periods of time, over the past several years, with the majority of those visits being to South Florida. He considers this a home away from home. Additionally, during his travel to Florida, the Plaintiff usually stays in several different locations so that he is able to enjoy a variety of different events and visit with several different friends, colleagues, and family members throughout Florida.

**7.** Defendant, PROVIDENT DORAL RESORTS, LLC, is a limited liability company, which is authorized to and does transact business in the State of Florida and within this judicial district.

8.      Pursuant to the Miami-Dade Property Appraiser's Office, Defendant, PROVIDENT DORAL RESORTS, LLC, is the owner and/or operator/manager of the real property located on or 5300 NW 87th Ave., Miami 33178 (hereinafter the "Subject Premises"), as well as the owner and/lor operator of the hotel known as PROVIDENT AT THE BLUE DORAL – MIAMI located at the Subject Premises.

9.      According to the Florida Department of Business and Professional Regulation, the Defendant, PROVIDENT DORAL RESORTS, LLC, was licensed on 5/15/2014 as a Hotel and occupies the Subject Premises as a hotel known as "Provident Doral at the Blue Miami".

10.     The Subject Premises are owned and operated by the Defendant and the Subject Premises is a public accommodation required by law to comply with the ADA and ADAAG.

11.     Despite Defendant's representation that their units/rooms are owned by individual owners who opt-in to a rental program, they still run and maintain "Provident Doral at the Blue Miami" as a hotel, have it licensed as a hotel, and offer their services and accommodations to the public via their hotel and website.

12.     According to Defendant's profile on TripAdvisor.com, they have a total of 215 rooms available for nightly rental accommodations, which the Defendant, as a licensed Hotel, manages and rents out to the public. In addition to their Hotel license, Defendant, PROVIDENT DORAL RESORTS, LLC, also hold licenses with the State of Florida for Permanent Food and Seating, Retail Beverage Sales, a Cosmetology business, and a Community Association Management Firm—all clearly indicating that the nightly rental accommodations that they manage and operate are a large part of their business, which is available to the public regardless of whether or not individual owners own the units which they voluntarily place in the Defendant's rental program.

13. Defendant, PROVIDENT DORAL RESORTS LLC, undoubtedly manages and maintains the common areas of the Hotel—and almost certainly has specific requirements and/or terms and conditions for the alleged individual owners to meet in order to participate in their alleged voluntary rental program. Plaintiff will obviously need to request records through discovery to see what the current requirements are for owners to participate in the rental program, as well as what modifications need to be made to those requirements, so that Defendants can maintain their approximately 215 room Hotel and public accommodation in compliance with the ADA and ADAAG, as required.

14. The hotel also has many common areas that are not individually owned which the Defendant has ownership and control over.

## FACTUAL ALLEGATIONS AND CLAIM

15. Plaintiff recently visited the Subject Premises on or about February 26, 2024, to stay and access to the extent possible, or attempted to access the Subject Premises and specific areas of the Subject Premises as described herein.

16. While visiting the Subject Premises, Plaintiff personally encountered or observed several barriers to access in violation of the ADA and ADAAG as detailed further herein at Paragraph 19. As a result, Plaintiff has been denied access to the Subject Premises and full and equal enjoyment of the goods and services offered therein because of his disability and will continue to be denied such access as a result of those barriers.

17. Said barriers to access at the Subject Premises endanger the safety of Plaintiff and all other individuals with disabilities, deny Plaintiff and others with disabilities equal access to the Subject Premises as to that of able-bodied persons, and causes undue difficulty, frustration, and resulting social embarrassment due to the difficulties encountering such barriers to access—a

social embarrassment that would not occur if the Subject Premises was in compliance with the ADA and ADAAG.

18.  In encountering the barriers to access at the Subject Premises, and suffering the resulting discrimination, endangerment, and embarrassment—the Plaintiff sustained a lawful injury-in-fact pursuant to the ADA.

19.  Pursuant to the mandates of 42 U.S.C. §12134(a), on September 15, 2010, the Department of Justice, Office of the Attorney General, published revised regulations for Title III of the Americans with Disabilities Act of 1990 in the Federal Register to implement the requirements of the ADA.  Public accommodations were required to conform to these regulations on or before March 15, 2012.[1]

20.  A specific, although not exclusive, list of unlawful physical barriers, dangerous conditions and ADA violations which preclude and/or limit Plaintiff's ability (because of his disability) to access the Subject Premises and/or full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Subject Premises include:

**Exterior Accessible Routes**

a)  Failure to provide an access aisle adjacent to the vehicle pull-up space in violation of 2010 ADAAG §§209.2.1, 503, 503.1, and 503.3.

b)  Failure to provide a compliant accessible route from the site arrival points in violation of 2010 ADAAG §§206, 206.2.1, and 206.2.2.

c)  Failure to provide a ramp with handrails on both sides in violation of 2010 ADAAG §§405, 405.8, 505, and 505.2.

**Accessible Parking**

d)  Failure to provide an access aisle adjacent to an accessible parking space in violation of 2010 ADAAG §§502 and 502.3.

**Entrance**

---

[1] "Safe Harbor. Elements that have not been altered in existing facilities on or after March 15, 2012, and that comply with the corresponding technical and scoping specification for those elements in the 1991 Standards are not required to be modified in order to comply with the requirements set forth in the 2010 Standards" 28 CFR §36.304(d)(2)(i), however, the violations described herein violate both the 1991 Standards as well as the 2010 Standards.

**e)**  Failure to provide the international symbol of accessibility (ISA) in violation of 2010 ADAAG §§216.6 and 703.7.2.1.

**Lobby Area**

**f)**  Failure to provide compliant clear floor space for an approach to the elevator button in violation of 2010 ADAAG §§305, 305.3, and 305.5.

**Accessible Public Men's Restroom**

**g)**  Failure to provide a self-closing compartment stall door in violation of 2010 ADAAG §§404.2.7, 604.8.1, and 604.8.1.2.

**h)**  Provides a twist locking mechanism that requires grasping, pinching, and twisting of the wrist to operate in violation of 2010 ADAAG §§213, 309.4, and 604.8.1.2.

**i)**  Failure to provide a u-pull handle on both sides of the toilet compartment stall door in violation of 2010 ADAAG §§404.2.7, 604.8.1.2, and 604.8.2.2.

**j)**  Failure to provide a toilet with the flush control mounted on the open side in violation of 2010 ADAAG §§213, 604, and 604.6.

**k)**  Failure to provide a toilet paper dispenser in the compliant location in front of the toilet in violation of 2010 ADAAG §§213, 604, and 604.7.

**Pool Area**

**l)**  Failure to provide a sufficient amount of bar seating where dining surfaces are provided for the consumption of food or drink in violation of 2010 ADAAG §§226, 226.1, 902, 902.2, and 902.3.

**m)**  Failure to provide a sufficient amount of compliant dining surfaces (table seating) in violation of 2010 ADAAG §§226, 226.1, 306.1, and 902.

**n)**  Failure to provide a compliant pool lift that is readily available in violation of 2010 ADAAG §§242, 242.4, 1009.1, 1009.2.1, and 1009.2.6.

**Pool Area Men's Accessible Restroom**

**o)**  Failure to provide a toilet paper dispenser in the compliant location in front of the toilet in violation of 2010 ADAAG §§603 and 604.7.

**p)**  Failure to provide a toilet seat cover dispenser in the compliant location (operable part too high) in violation of 2010 ADAAG §§205.1, 308, 309.2, and 309.3.

**q)**  Failure to provide a mirror at the compliant height above the finish floor in violation of 2010 ADAAG §§603 and 603.3.

**r)**  Failure to provide grab bars free from obstructions (toilet paper roll & toilet seat cover dispenser) in violation of 2010 ADAAG §§603, 604.5, and 609.3.

**Accessible Guestroom**

s) Failure to provide 18 inches of maneuvering clearance to exit the guestroom in violation of 2010 ADAAG §§404, 404.2.4.1, and 806.2.

t) Failure to provide a security latch that does not exceed the maximum height requirement in violation of 2010 ADAAG §§308, 309.3, and 806.2.

u) Failure to provide a lowered ironing board at the compliant reach range height in violation of 2010 ADAAG §§308 and 309.3, and 811.3.

v) Failure to provide a compliant door threshold at the patio sliding door in violation of 2010 ADAAG §§303, 303.2, 303.3, 404, and 404.2.5.

w) Failure to provide a lowered microwave oven at the compliant reach range height in violation of 2010 ADAAG §§212.2, 308, 309.3, 804, and 804.6.2.

x) Failure to provide a toilet paper dispenser in the compliant location in violation of 2010 ADAAG §§603 and 604.7.

y) Failure to provide a lowered towel shelf in violation of 2010 ADAAG §§308, 309.3, 603.4, and 604.8.3.

z) Failure to provide coat hooks at the compliant reach range height in violation of 2010 ADAAG §§308, 309.3, 603.4, and 604.8.3.

aa) Failure to provide a toilet with the flush control mounted on the open side in violation of 2010 ADAAG §§213.2, 603, 604.6, 806.2.4.

**Roll-in Shower**

bb) Failure to provide a foldable seat in a roll-in shower as required in transient lodging guest rooms in violation of 2010 ADAAG §§213, 603, 608.4, 610.3, and 806.2.

cc) Failure to provide a lowered shower spray unit in violation of 2010 ADAAG §§308, 309.3, and 608.6.

dd) Failure to provide grab bars free from obstructions in violation of 2010 ADAAG §§608.3 and 609.3.

**Bathtub**

ee) Failure to provide compliant clearance in front of the bathtub in violation of 2010 ADAAG §§607, 607.2, and 806.2.4.

ff) Failure to provide bathtub controls mounted in the compliant location in violation of 2010 ADAAG §§607, 607.5, and 806.2.4.

gg) Failure to provide a compliant lowered shower spray unit in violation of 2010 ADAAG §§607, 607.6, and 806.2.4.

hh) Failure to provide a compliant grab bar at the end head end wall in violation of 2010 ADAAG §§607, 607.4, and 607.4.2.3.

        **ii)**    Failure to provide a compliant seat capable of secure placement in violation of 2010 ADAAG §§607, 607.3, 610.2, and 806.2.4.

21. The above listing is not to be considered all-inclusive of the barriers, conditions or violations encountered by Plaintiff and/or which exist at the Subject Premises. Plaintiff requires an inspection of the Subject Premises in order to photograph, measure, and determine all of the discriminatory acts violating the ADA, including specifically those barriers to access and violations which were concealed by the initial barriers to access and violation which Plaintiff encountered and/or observed, as well as those violations in other remaining accessible guestrooms which the Plaintiff and/or others with disabilities may stay in the future.

22. The removal of the physical barriers, dangerous conditions, and ADA violations set forth herein is readily achievable and can be accomplished and carried out without much difficulty or expense pursuant to 42 U.S.C. § 12182(B)(2)(A)(iv); 42 U.S.C. § 12181(9); and 28 C.F.R, § 36.304.

23. The ADA defines "readily achievable" as "easily accomplishable and without much difficult or expenses", 42 U.S.C. §12181(9). Congress included in the ADA factors to be considered in evaluating whether removal of a barrier is "readily achievable." These factors are (1) nature and cost of the action; (2) overall financial resources of the facility or facilities involved; (3) number of persons employed at such facility; (4) effect on expenses and resources; (5) impact of such action upon the operation of the facility; (6) overall financial resources of the covered entity; (7) overall size of the business of a covered entity; (8) the number, type, and location of its facilities; (9) type of operation or operations of the covered entity, including composition, structure, and functions of the workforce of such entity, and (10)geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the

covered entity. Garthright-Dietrich v. Atlanta Landmarks, Inc., 452 F. 3d 1269, 1272-73 (11th Cir. 2006).

24. The obligation to engage in readily achievable barrier removal is a continuing one. Over time, barrier removal that initially was not readily achievable may later be required because of changed circumstances. *See* DOJ ADA Title III Technical Assistance Manual, Section III-4.4400 Continuing obligation.

25. Because, *inter alia,* this Subject Premises was designed, constructed, and received its State Licensure on 5/15/2014, Plaintiff asserts that said ADA violations are intentional in nature and will not be corrected absent Court intervention, thus exacerbating the intentional legal harm and injury to which Plaintiff has been and will continue to be subjected in the future.

26. Plaintiff will undoubtedly return to the Subject Premises once the barriers to access have been remediated—not only to avail himself of the goods and services available at the Subject Premises, but to confirm and assure himself that the Subject Premises has been brought into compliance with the ADA and *maintained* in compliance with the ADA so that Plaintiff and other persons with disabilities will have equal access to the Subject Premises without fear of discrimination, endangerment of their safety, or social and public embarrassment. Plaintiff intends to return to the Subject Property within the next thirty (30) days. Plaintiff would prefer to return to the Subject Premises *after* the remediations are made and maintained so that he does not have to subject himself to the same discrimination, endangerment, difficulty, frustration, and social embarrassment he has already experienced.

27. Independent of his personal desire to access this place of public accommodation as required by law, Plaintiff is an advocate of the rights of similarly situated persons with disabilities and an advocate for asserting his own civil rights. However, Plaintiff is deterred

from returning to the Subject Premises as long as the Defendant continues to operate the Subject Premises in violation of the ADA and ADAAG.

28. Plaintiff has a realistic, credible, and continuing threat of discrimination by the Defendant as long as the Subject Premises remains in non-compliance with the ADA.

29. Defendant has discriminated against Plaintiff and others with disabilities by denying access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Subject Premises, as prohibited by 42 U.S.C., § 12182, *et. seq.*, and by failing to remove architectural barriers as required by 42 U.S.C., § 12182(b)(2)(A)(iv) and will continue to discriminate against Plaintiff and others with disabilities unless and until Defendant is compelled to remove all physical barriers that exist at the Subject Premises, including those specifically set forth herein, and make the Subject Premises accessible to and usable by persons with disabilities, including Plaintiff.

30. Plaintiff has suffered and continues to suffer direct and indirect injury as a result of the ADA violations that exist at the Subject Premises and the actions or inactions described herein.

31. Plaintiff is without adequate remedy at law and is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm unless and until Defendant is required to remove the physical barriers, dangerous conditions and ADA violations that exist at the Subject Premises, including those set forth herein.

32. Plaintiff has been obligated to retain undersigned counsel for the filing and prosecution of this action. The Plaintiff is entitled to have his reasonable attorney's fees, costs and expenses paid by the Defendant, pursuant to 42 U.S.C., §§ 12205 and 12217.

**33.** Pursuant to 42 U.S.C. §12188(a), this Court is provided with authority to grant injunctive relief to Plaintiff, including an order to alter the Subject Premises to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA, and closing the Subject Premises until the requisite modifications are completed.

**WHEREFORE,** Plaintiff respectfully requests that the Court issue a permanent injunction enjoining Defendant from continuing is discriminatory practices, ordering Defendant to remove the physical barriers to access and alter the Subject Premises to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA, closing the Subject Premises until the barriers are removed and requisite alterations are completed, and awarding Plaintiff his reasonable attorney's fees, expert fees, costs and litigation expenses incurred in this action.

Respectfully submitted,

s/ Glenn R. Goldstein
Glenn R. Goldstein, Esq. (FBN: 55873)
   *Attorney for Plaintiff*
Glenn R. Goldstein & Associates, PLLC
8101 Biscayne Blvd., Ste. 504
Miami, Florida 33138
(561) 573-2106
GGoldstein@G2Legal.net

s/ Lauren N. Wassenberg
Lauren N. Wassenberg, Esq. (FBN: 34083)
   *Attorney for Plaintiff*
Lauren N. Wassenberg & Associates, P.A.
33 SE 4th St., Ste. 100
Boca Raton, Florida 33432
(305) 804-5435
WassenbergL@gmail.com